**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM FABRICIUS, | Case No. 1:15-cv-01779-LJO-EPG |
| Plaintiff, | **FINDINGS AND RECOMMENDATION THAT DEFENDANTS' MOTIONS TO DISMISS BE GRANTED IN PART AND DENIED IN PART** |
| v. | |
| TULARE COUNTY, *et al.*, | (ECF No. 78, 88) |
| Defendants. | |

## I.     INTRODUCTION

William Fabricius ("Plaintiff" or "William"), proceeding *pro se* and *in forma pauperis*, commenced this action against numerous defendants alleging claims under 42 U.S.C. § 1983 in connection with the seizure of twenty-five dogs.[1] This action is now proceeding on Plaintiff's Third Amended Complaint ("3AC"). Plaintiff summarizes his claims as follows:

> This is a complaint on a series of events that is based on William's dog takings from 27Apr2013 and 22Oct2013, Warrant application on 21Oct2013, series of animal control hearings from 24Nov2013 to 18Mar2014, series of inadequate training of workers from 27April2013 to current date.

---

[1] Wendy Jones and Brian Jones were also party plaintiffs in this action. (ECF No. 1). Brian Jones voluntarily dismissed his claims against Defendants on May 16, 2016. (ECF No. 18). On December 1, 2016, the Court granted Defendants' motion to dismiss the claims of Wendy Jones under the *Rooker-Feldman* doctrine without leave to amend. (ECF No. 58).

This complaint mainly involves Due Process-no probable cause issues spanning 27April2013 to current date. Along with these core claims are subsequent claims of unlawful arrest, unreasonable force during arrest, multiple due process issues regarding having no warrant without probable cause, warrant without probable cause, application of a warrant without probable cause, multiple animal control hearings without due process jurisdiction, multiple Superior Court hearings without due process jurisdiction ending in euthanization [sic] of William's animals and inadequate supervisions and training of Patronage workers in their personal and Official Capacities. Also discussed will be the lack of burden of proof to establish jurisdiction and accusation of operation of a commercial business occupation.

Third Am. Compl. ¶¶ 17-18 (ECF No. 75).

Now before the Court are Defendants' motions to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiff lacks standing and that the 3AC fails to state a claim upon which relief can be granted. Defs.' Mot. Dismiss (ECF Nos. 78, 88).

For the reasons detailed below, Defendants' motions should be GRANTED IN PART AND DENIED IN PART.

## II.     PROCEDURAL BACKGROUND

On November 24, 2015, William Fabricius, through his attorney, Christine Louise Garcia,[2] filed the original complaint in this action. (ECF No. 1). On December 7, 2015, Plaintiff moved to proceed *in forma pauperis*, which the Court granted. (ECF Nos. 6, 8). Plaintiff filed a First Amended Complaint ("1AC") on May 13, 2016. (ECF No. 17).

On July 5, 2016, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 34). Defendants argued, among other things, that the Court should dismiss the action for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, which provides that review of state court decisions may be conducted only by the United States Supreme Court, because the issues were already litigated in state court.

The Court held a motion hearing on October 7, 2016. (ECF No. 50). The Court took

---

[2] On March 8, 2017, the Court granted Christine Louise Garcia leave to withdraw as counsel for Plaintiff. (ECF No. 70).

judicial notice of and examined the extensive record in which Plaintiff challenged the seizure of his dogs, including through administrative hearings, an appeal from an administrative determination, and an action in Tulare County Superior Court. It appeared that an appeal had been granted in Plaintiff's favor, and that Plaintiff was permitted to retrieve his dogs so long as he complied with health and safety codes. It also appeared that the Tulare County Superior Court case covering issues presented in this action was still pending.

On December 1, 2016, the Court granted Defendants' motion to dismiss with leave to amend as to Plaintiff. (ECF No. 58.) The Court concluded that, although there were facts suggesting that Plaintiff litigated similar issues in state court, the 1AC was too disorganized and vague to determine whether the *Rooker-Feldman* doctrine eliminated the Court's jurisdiction.

On May 1, 2017, Plaintiff filed his Second Amended Complaint ("2AC"). (ECF No. 71). The 2AC was 59 pages long, and appeared to have 13 causes of action, almost all of which asserted violations of the criminal code. The Court screened the 2AC pursuant to 28 U.S.C. § 1915(e)(2), and on June 19, 2017, dismissed it with leave to amend. (ECF No. 74). The Court found that the 2AC violated Fed. R. Civ. P. 8 as it was not clear exactly who violated what right and why. The Court granted Plaintiff one more opportunity to file an amended complaint. The Court directed Plaintiff to limit his third amended complaint to 20 pages total, summarize the facts about the arrest and seizure of the dogs, list each claim against each person, state what each person did that violated Plaintiff's legal rights, and state what relief Plaintiff requests. The Court also provided legal standards that Plaintiff could consider in drafting a third amended complaint.

On July 24, 2017, Plaintiff filed his Third Amended Complaint. (ECF No. 75). The 3AC listed several new Defendants. Finding that it complied with the technical requirements of the Court's prior order, the Court declined to screen the 3AC, and directed Plaintiff to serve any new Defendants listed in the 3AC with process. (ECF No. 76). The Court also directed Defendants to file a responsive pleading.

On September 1, 2017, and September 29, 2017, Defendants moved to dismiss the 3AC pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF Nos. 78, 88). On September 28, 2017,

Plaintiff filed his opposition to the motion to dismiss. (ECF No. 85). On October 6, 2017, the Court heard arguments on the motions to dismiss. (ECF No. 89).

On October 25, 2017, Plaintiff submitted summonses for 18 new defendants to be served with the 3AC, bringing the total number of defendants to 34.

On December 7, 2017, the newly served Defendants filed a notice of joinder in the motion to dismiss, (ECF No. 100), with the exception of Kathleen Marie Bales-Lange, Esq., Lisa Marie Tennenbaum, Esq., Tulare County Sheriff Officer Zendajas, Ralph Mario Agnello, Esq., Thomas Elliott Hornburg, Esq., Valeriano Saucedo, and Cecile F. Shaffer, DVM, who were not served with process.

### III.    PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff's 3AC totals twenty pages. It names over thirty defendants, contains thirteen enumerated claims, and asserts additional claims within each enumerated claim.

Claims I, II, and III concern events that occurred on April 27, 2013. Plaintiff alleges that on April 27, 2013, officers unlawfully seized eight of his dogs. Plaintiff asserts that Tulare County Animal Control Officer Jeffrey Lewis ("Lewis") and Tulare County Sheriff Officers Bradley McLean ("McLean") and Lance Heiden ("Heiden") trespassed onto his property without a valid warrant supported by a competent first-hand eyewitness, arrested him without probable cause, and used excessive force against him. Plaintiff heard Animal Control Officer Grenseman ("Grenseman") state over the phone that he has taken and euthanized thousands of dogs without any warrants in Tulare County. Plaintiff also asserts that no warrant was returned to Superior Court regarding the seizure of his animals on April 27, 2013.

Plaintiff further asserts:

> Lewis left spent unauthorized FDA drug tranquilizer cartridges on William's land.
>        William witnessed Lewis shoot a tranquilizer gun, without clear visibility, with FDA controlled substances to tranquilize William's animals. Then Lewis dragged the tranquilized animals by a catch noose from underneath William's protective porch. Lewis then lifted the animals by the catch noose inhumanly up and over a 4 foot fence. Lewis dragged them on the ground. Then Lewis brutally threw them into his animal control truck. William witnessed this heartbreaking terrible act eight times. William was helpless to do anything as William was tightly handcuffed. Lewis

4

was obviously inadequately trained on search warrants and proper handling of drugged and tranquilized animals by the use of FDA controlled drugs.

Plaintiff also alleges that the officers used unreasonable force. Plaintiff asserts that McLean demanded that he produce identification on his own property. McLean asked if Plaintiff had anything that could poke, stab, or cut the Officer. Plaintiff responded in the negative, and McLean immediately twisted Plaintiff's right wrist to the middle of his back, causing him pain. McLean placed Plaintiff in tight, restrictive, and painful handcuffs, and confined Plaintiff to the front of McLean's cruiser for over one hour in the hot sun, which exacerbated and contributed to Plaintiff's hypertension medical condition. Plaintiff complained to McLean that the handcuffs were too tight and restricted his blood flow. McLean declined to adjust the handcuffs. Plaintiff suffered a shoulder injury from the handcuffs, and developed bronchitis. Plaintiff notified Heiden of Plaintiff's medical condition. Heiden and McLean did not request medical treatment for Plaintiff. After one hour, Heiden loosened the handcuffs. Plaintiff further asserts, "McLean did not have reasonable articulated suspicion (RAS) of what crime Plaintiff was potentially accused of requiring handcuffing and what crime justified William producing identification on his land."

Plaintiff further alleges that the officers arrested him unlawfully. Plaintiff asserts that McLean, Heiden, and Lewis arrested him pursuant to California Penal Code § 148(a) for resisting arrest and for not having identification without a warrant or probable cause. Plaintiff also asserts that when McLean and Heiden arrested him, they failed to inform him of his Miranda rights. Plaintiff further states:

McLean and Heiden jointly authored Tulare County Sheriff's report number 13-5348 for resisting arrest pursuant to PC§148(a). Tulare County Sheriff did not provide evidence of report 13-5348 to William. In the Sheriff report13-5348 both McLean and Heiden stated that William had resisted arrest. McLean and Heiden requested that the Tulare County Dist. Atty to press charges of resisting arrest against William. Upon review, Tulare County Dist. Atty. Ward declined to prosecute William on resisted arrest. However Mclean and Heiden conducted their 27Apr2013 activities under PC§148 (a). This Sherriff report substantiates and provides evidence that McLean and Heiden worked together and they assumed that William was allegedly arrested for criminal PC §148(a) behavior. Therefore in the mind of Mclean and Heiden, Miranda rights should have been required and were not given to William. When [the officers] treated William like

a criminal by tightly handcuffing for longer than one hour, William was unable to contact his lawyer.

Claims V, VI, and VII concern events that occurred on October 22, 2013. Plaintiff alleges that Tulare County Animal Control Officers Lewis, Grenseman, Larry Hernandez, Oren Hartley, and Tulare County Sheriff's Officers Oladalo Popoola ("Popoola"), Zendajas, and Torres trespassed onto his land without a valid warrant supported by a competent first-hand witness, searched his home, seized twenty-five dogs, and arrested him without probable cause. Plaintiff asserts that Grenseman assumed that Plaintiff was involved in commerce and running a commercial kennel.

Plaintiff also alleges that Popoola, Zendajas, and Torres were inadequately trained on seizure and search warrants. Plaintiff asserts that he requested that Torres produce a valid warrant with a sworn competent affidavit, but Torres gave him a false warrant. Torres also stated that he did not need a sworn affidavit or competent eyewitness complaint, and he could seize the animals based on the authority of the warrant alone.

Plaintiff further alleges that he witnessed the officers shoot his dogs with FDA controlled substances to tranquilize them. The officers then dragged the animals by a catch noose from underneath of a protective porch and other locations. The officers threw the animals into the animal control trucks. Plaintiff witnessed this for all twenty-five of his companion animals.

Plaintiff also alleges that he was unlawfully arrested on October 22, 2013. Plaintiff asserts that he was arrested between three armed officers and did not have freedom of movement for over two hours. He was in the hot sun, without water, which exacerbated his medical condition. The officers, Popoola, Zendajas, and Torres, did not use reasonable articulated suspicion of what crime Plaintiff was involved in and what crime justified the arrest upon Plaintiff's land. Plaintiff also asserts that Popoola, Zendajas, and Torres were improperly trained on due process, arrest, seizures, and search warrants.

Plaintiff also alleges that his home was unlawfully searched on October 22, 2013. Plaintiff asserts that Popoola and Zendajas searched his home for 20 minutes. He objected, and told Torres that the warrant was an abatement/inspection seizure warrant, not a search warrant supported by

6

probable cause or a competent first-hand eyewitness. Torres stated that he could search Plaintiff's home with the warrant, and indicated that Plaintiff could discuss his objections with the court. Plaintiff asserts that Torres violated the warrant.

Plaintiff further alleges that he did not get a copy of Sheriff's report number 13-13931, which was authored by the Popoola, Zendajas, and Torres, and provides evidence that the officers violated his constitutional rights.

Claim IV and Claims VIII through XIII concern alleged "due process fraud." Plaintiff alleges that on or about October 17, 2013, or October 21, 2013, Kathleen Alison Taylor ("Taylor") and Hernandez initiated an application for a weed abatement/inspection warrant and seizure warrant ("the warrant") pursuant to California Code of Civil Procedure § 1822.50. Plaintiff asserts that on March 25, 2014, Taylor filed a declaration in Tulare County Superior Court, Case No. VCU 253890. Plaintiff asserts that Hernandez was not a competent first-hand witness. Plaintiff also asserts:

> Taylor and ACO Hernandez violated William's due process rights by fraudulently initiating an inspection warrant for commercial businesses when William is not engaged in commercial kennel activities. There is no evidence that support subject matter jurisdiction that William is operating a kennel. Whenever an agency is receiving federal funds that agency has no immunity. State law mirrors federal law. Local agencies cannot claim immunity. . . . This is fraud against William. This is extrinsic fraud against the Visalia Superior Court and also CAED. Taylor and Hernandez gave William no notice.

> William alleges that Taylor did not establish jurisdiction, the weed abatement/inspection and seizure warrant in VCU 253890 is void and null for lack of jurisdiction and/or want of jurisdiction and has no force and effect of law. All acts that follow the preparation, filing and executing the warrant are void and null for lack of jurisdiction and want of jurisdiction. . . . This includes all the acts and consequences of the second dog taking, ACO hearings 1, 2, 3 and 4, VSC hearings 1 , 2, 3 and 4, and the Euthanizing of William's animals. William alleges that all these activities are based upon fraud due to the fraudulent warrant initiated by Taylor and Hernandez based on hearsay. This is fraud against William. This is extrinsic fraud against the courts.

Plaintiff further asserts that the warrant was issued as a special inspection warrant under CCP §1822.50, which does not authorize seizure and search.

Plaintiff also alleges that Taylor improperly initiated proceedings to secure the warrant.

7

Plaintiff asserts that Taylor had no jurisdiction to initiate a lawsuit because she "is an attorney for the Tulare County Council, who has the authority to act only as a litigator, not a prosecutor." Plaintiff also asserts that Taylor used a weed abatement procedure to fraudulently seize his animals and search his home.

Plaintiff further alleges that Taylor and Teresa Saucedo influenced Valeriano Saucedo, a former Judge of Tulare County Superior Court, to sign the warrant. Plaintiff asserts that the application for a warrant constitutes fraud and a false filing in the court. Plaintiff also asserts that Judge Saucedo "performed a non-judicial act violating William's 1st, 4th and 14th Amendment constitutional rights, making the warrant invalid and void at conception by allowing Taylor and T Saucedo to influence him in signing the warrant." Plaintiff also alleges that Judge Saucedo was under investigation by the California Judicial Performance when he signed the warrant, and was subsequently removed from the bench for violating canons and ethics rules. This, Plaintiff alleges, establishes "the basis of an unreasonable, illegal and unlawful search of William's home and seizure of his animals."

On November 25, 2013, a hearing was held before Animal Control Hearing Officer Ralph Mario Agnello, Esq. ("Agnello") to determine whether Plaintiff's animals were "vicious and dangerous." Plaintiff alleges that Agnello did not conduct a neutral, impartial, fair, and meaningful hearing, and violated Plaintiff's First Amendment rights by not upholding Agnello's constitutional oath. Plaintiff asserts that Agnello did a so-called "bait and switch" and changed the cause of action from "dangerous and vicious" to "sick and endangered" to justify the lack of warrant. Plaintiff further asserts that Agnello violated various case laws: (1) the finding in *Marbury v. Madison* that a law repugnant to the Constitution is void; (2) *Haas v County of San Bernardino* by acting as a hearing officer for the administrative agency that pays him; and (3) *Smith v. US District Court Officers* by failing to provide or enforce access to records and reports.

Plaintiff also alleges that Agnello stated that the County of Tulare was estopped from proceeding. Plaintiff asserts that this is "falsification and frauding [sic] of the complete animal control process," and fraud upon the court by Agnello, Taylor, Grenseman, Hernandez, and Lisa Marie Tennenbaum, Esq. ("Tennenbaum"). Plaintiff further alleges that Agnello ordered

8

Tennebaum and Taylor to provide Plaintiff with all of the Sheriff Reports as well as Animal Control Office kennel cards and reports, but Plaintiff did not receive them. Plaintiff asserts that Taylor and/or Tennenbaum blocked his access to reports and records, and thereby violated his right to a fair, impartial, and meaningful hearing.

Plaintiff also alleges that Taylor and Tennebaum excluded evidentiary exhibits of hearings with malice and intent. Plaintiff asserts that he was going to call Grenseman as a witness at a hearing on November 24, 2013. On or about December 4, 2013, Grenseman was fired, and Plaintiff was not able to call him as a witness. Agnello, Taylor, and Tennenbaum knew or should have known that this was a violation of Plaintiff's 1st, 4th and 14th Amendment rights.

On December 18, 2013, Plaintiff had a hearing before Agnello to determine whether Plaintiff's animals were sick and endangered. Plaintiff alleges that Hernandez, Tennenbaum, Taylor, Tulare County Animal Control Officer Patrick Hamblin ("Hamblin"), and Cecile F. Shaffer, Doctor of Veterinary Medicine ("Dr. Shaffer") testified at the hearing. Plaintiff alleges that Dr. Shaffer was the supplier of FDA controlled drugs used by animal control. Plaintiff further alleges that the entire hearing focused on whether Plaintiff's animals were sick and endangered, and no evidence was present that the animals were vicious and dangerous. Plaintiff asserts that his animals should have been returned upon his motion to the hearing officer because the warrant identified the animals as vicious and dangerous, not sick and endangered.

On January 30, 2014, a hearing was held before Agnello to determine whether Plaintiff's animals were sick and endangered. Plaintiff alleges that Hernandez, Hamblin, Tennenbaum, and Taylor testified at the hearing. Plaintiff also alleges that Matt Flynn and John Flynn testified as eyewitnesses that they did not see Plaintiff's animals cause harm. Plaintiff asserts that this testimony contradicts and opposes the basis for the warrant, stating:

> Hernandez's sworn declaration states that William's animals are dangerous and vicious. William alleges that Matt Flynn and John Flynn are speaking truthfully. William alleges that the original VCU253890 application of abatement/inspection and seizure warrant is based upon hearsay. This constitutes fraud on the court. William alleges that upon fraud the nature and cause of the action becomes void and null for lack of jurisdiction and want of jurisdiction. William alleges that the entire proceedings of VCU253890 are based upon fraud. "Fraud vitiates everything" [US

9

v Throckmorton [98 U.S. 61(1878)]]. William alleges that VCU253890 is void, null. William alleges that Taylor attempted to obtain jurisdiction by fraud.

Plaintiff further alleges that Agnello continued with the hearing despite Flynn's testimony and without jurisdiction to avoid the issue that there was no warrant. Agnello also stated multiple times that the warrant was defective. Plaintiff moved for the return of his animals. Defendant Agnello ruled against him. Plaintiff asserts that Defendant Agnello committed fraud because it was clear and convincing that Plaintiff's animals had not caused harm to any other animal. Specifically, Plaintiff states:

> Agnello did not return William's animal upon motion. No autopsy/necropsy was done. William alleges that there are animals of prey that roam this range from the foothills surrounding William. William entered into evidence in the ACO hearings, pictures of animals of prey in this area. Hernandez presented color photographs that in the original VCU253890 warrant. This contradicts Matt Flynn's transcript 30Jan2013 testimony pg 17 lns 1 to pg 17 ln 15. William alleges that there exists a controversy between Hernandez's declaration and Flynn's testimony.

> William moved Agnello to have William's animals returned to William due as there was o [sic] no evidence that William's animal had done any harm to Mr. Flynn's cattle. William alleges that Hernandez's declaration, in his personal and official capacity, that was prepared by Taylor appears to be now exposed as hearsay and fraud. William alleges that Hernandez hearsay evidence documents, show fraud upon the court. Agnello, in his personal and official capacity, did not return William's animals. (See Hafer, See Melo). William alleges that Agnello violated William's 1st, 4th and 14th Amendment rights of due process.

On March 14, 2014, Animal Control Hearing Officer Thomas Elliott Hornburg, Esq. ("Hornburg") held a hearing to determine whether Plaintiff's animals could be returned to him. Plaintiff alleges that Hornburg "did a so called 'bait and switch' and changed the cause of action from 'sick and endangered' animals back to 'dangerous and vicious' animals" to justify the lack of warrant. Plaintiff asserts, "Mr. Hornburg changed the cause and nature of VCU253890 from 'Sick and endangered' [Agnello's order] to Hornburg's Order that 'It's a vicious hearing.' 'Vicious and dangerous'. This is a violation of William's 1st, 4th and 14th Amendment Due process rights to know the cause and nature of the offense against William. The Cause and nature is going back and forth like a shuttlecock from 'Vicious and dangerous' to 'Sick and endangered'

10

back to 'Vicious and dangerous' at the whim of the hearing officer."

Plaintiff further alleges that Hornburg was unprepared for the hearing, and that Hornburg said he had not read any of the transcripts and/or the documents in the case. Plaintiff asserts that the hearing was not fair, impartial, and meaningful because of Hornburg's admission. Plaintiff further asserts that Hornburg "knew or should have known that the VCU253890 warrant was defective based on no probable cause and a perjured declaration by Hernandez," which creates "lack of jurisdiction and want of jurisdiction for any hearing based on VCU253890."

Plaintiff also alleges that he moved for the return of his animals in good health, and his animals were not returned to him. Plaintiff asserts that Hornburg ruled against him, declared his animals dangerous and vicious, and had the animals euthanized based upon hearsay evidence, a defective warrant, and fraudulent testimony by Taylor and Hernandez with no probable cause in violation of the Hass case. Plaintiff further alleges, "Hornburg attempted to contract with William to force William to operate a commercial kennel with constant inspection and supervision. William is not involved in commerce. William did not contract with Hornburg in what William considers to be an unconscionable contract and extortion. William has the constitutional right not to contract."

Plaintiff also alleges that he received a letter dated March 25, 2014, from the Law Office of Houk and Hornburg, Inc. stating that twenty-five (25) dogs were determined to be dangerous animals that should not be returned to Mr. Fabricius. Plaintiff believes that this is the reason he did not get his animals back.

On January 30, 2014, Plaintiff had a hearing before Judge Papadakis. Plaintiff alleges that he served the County of Tulare with notice of the hearing, but Taylor failed to appear. Judge Papdakis continued the hearing until April 10, 2014, to allow Taylor to appear and did not dismiss the case. Plaintiff alleges Judge Papadakis gave Taylor special rights by not dismissing the hearing.

Plaintiff also alleges that Judge Papadakis did not give him official records of proceedings that were held on January 30, 2014, April 10, 2014, and April 22, 2014. Plaintiff asserts Judge Papadakis' conduct constitutes "spoliation of the record and is a violation of

William's 1st, 4th and 14th Amendment due process rights." in violation of his due process rights to a fair and meaningful hearing.

On June 30, 2014, a hearing was held before Judge Hillman. Plaintiff alleges that Judge Hillman did not give him a copy of the official records, and thereby violated his First Amendment right to due process. Plaintiff also alleges Taylor failed to provide him with notice of the hearing and an opportunity to be heard. Plaintiff asserts that Taylor euthanized his animals for reasons "unknowable and incomprehensible" to him, and committed fraud on the court by holding a hearing to euthanize the dogs without jurisdiction, notice, and an opportunity to be heard in violation of the 1st, 4th and 14th Amendment.

## IV.    REQUIREMENT OF A SHORT AND PLAIN STATEMENT

Federal pleading standards require "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff bears the burden of separately setting forth his legal claims, and for each claim, briefly and clearly providing the facts supporting the claim so that the Court and Defendants are readily able to understand the claims. *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840-41 (9th Cir. 2000).

The Court finds that Plaintiff's pleading violates Rule 8. The Court previously directed Plaintiff to set forth a short and plain statement of his claims by identifying each individual defendant, stating how each defendant violated his legal rights, summarizing the facts supporting his claims, and stating his request for relief. (ECF Nos. 58, 74). Plaintiff's 3AC, however, is repetitive and difficult to understand. It names over thirty defendants, and combines various facts, assertions, and defendants.

It is also impossible to determine from the complaint what happened to Plaintiff's dogs and what relief he is seeking from the Court. As described above, Plaintiff eventually won an appeal and was given an opportunity to retrieve his dogs so long as they were treated in accordance with Health and Safety codes. Accordingly, the Court directed Plaintiff to describe in his amended complaint why he did not retrieve his animals following a favorable administrative determination. Plaintiff again does not describe why he failed to retrieve his dogs following the

favorable determination.  Instead, in his amended complaint, Plaintiff at times requests the return of his dogs in good health and, at other times, alleges that his dogs have been euthanized.  This makes it very difficult to understand what happened and what relief Plaintiff now seeks.

In order to understand what Plaintiff is truly alleging in his complaint, the Court held a hearing and asked Plaintiff at oral argument to identify his claims clearly and succinctly. The Court first asked Plaintiff to identify one claim he is alleging. Plaintiff responded, "I believe that the one claim that is the strongest is the violation of *Connor v. City of Santa Ana*." The Court explained that a case name is not a cause of action, and asked Plaintiff to identify a violation of a federal right. Plaintiff initially responded, "trespass" and "taking of animals without a warrant," but then stated that Lewis, McLean, and Heiden had violated his First Amendment rights. Plaintiff explained that the defendants had provided him "no notice, no opportunity for a hearing prior to the taking of property."

Defendants responded that they gave Plaintiff notice of the opportunity for a post-seizure hearing, but he did not avail himself of it. Plaintiff replied, "The first dog taking did not comply with that, there was no notice, no opportunity . . . . the notice was given to me at the day however I understand under *Halverson* it's a prior to . . . that a notice must be given prior to any taking." Plaintiff further asserted that the defendants did not comply with their own ordinance, stating, "I am on land patented federal protected property. My property is protected under federal land patent, and that makes it federal jurisdiction. I believe that the ordinance codes of Tulare do not apply on federal land. It is just like the park land or a military base. . . . They don't have jurisdiction on federally land protected land, land patented land, and I am not involved in commerce so the ordinance laws do not apply to me. . . . Are you familiar with *Summa v. . . Summa v. el rel.* . . . . That is a United States Supreme Court case that no one has the when you have land patented land you have superior title that the land came from the Treaty of Guadalupe Hidalgo directly to the United States government directly to predecessors of myself. . . . That property that I'm on is federally protected land patent land; it is not in the State of California."

Plaintiff next stated that he has a claim under the Fourth Amendment for unreasonable search and seizure because the defendants did not have a warrant to take his property. Plaintiff stated, "there was no warrant and no eyewitness first-hand competent witness."

Plaintiff further stated that defendants violated the Fourth Amendment by arresting him with unreasonable force during a second dog taking. Plaintiff explained:

> There were four Animal Control Officers and three Tulare County Sheriff's Officers. There was Grenseman, Hernandez, Lewis, and Hartley as animal control. Torres, Popoola, and Zendajas were the three Tulare County Sheriff's Officers. They were armed. They put me under arrest. The first dog taking they actually handcuffed me. The second dog taking they put me between three armed officers. I asked Mr. Torres, I am free to go, and he said, no you're under arrest. . . . The second dog taking there was no warrant, no eyewitness affidavit in violation of *Halverson*, which I believe is a Fourth Amendment right.

The Court then asked Plaintiff to identify any other violation of federal law. Plaintiff stated that during the second dog taking, the defendants searched his home without a warrant. Defendants responded that they presented a warrant issued by Tulare County Superior Court, and the warrant was later upheld as valid in an administrative proceeding. Plaintiff responded, "The warrant that was given on the 21st of October 2013 by Saucedo said that only outbuildings could be searched that the resident or the house, the home could not be searched. It's right on the warrant."

The Court next asked Plaintiff why he did not retrieve his animals after a favorable ruling from the administrative proceeding. Plaintiff responded, "Hornburg required me to go through all the trainings with all the dogs prior to a certain time. It was an impossibility. . . . The property that I have is federal land property that means it is exempt from county codes."

Given Plaintiff's explanation, the Court has attempted to address the claims that Plaintiff specifically explained at oral argument, to the extent the Court finds support in Plaintiff's amended complaint.

## V. LEGAL STANDARD – RULE 12 MOTION TO DISMISS

A Rule 12(b)(1) motion to dismiss is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12 (b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual."

1  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227

2  F.3d 1214, 1242 (9th Cir. 2000)).  "In a facial attack, the challenger asserts that the allegations

3  contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By

4  contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

5  themselves, would otherwise invoke federal jurisdiction." *Id.*

6         Here, Defendants' Rule 12(b)(1) motion to dismiss is a factual attack because the

7  argument relies upon extrinsic evidence. *See White*, 227 F.3d at 1242.  In a factual attack, "a court

8  may look beyond the complaint to matters of public record without having to convert the motion

9  into one for summary judgment." *Id.* (citations omitted).  Furthermore, a court "need not presume

10  the truthfulness of the plaintiffs' allegations." *Id.* (citing Moore's Federal Practice ¶ 12.30[4], at

11  12–38).

12         A motion to dismiss filed pursuant to Rule 12(b)(6) tests legal sufficiency of a claim for

13  relief. *See* Fed. R. Civ. P. 12 (b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff

14  must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

15  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for

16  more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint

17  pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

18  between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

19  (2009).  The court must "accept all factual allegations in the complaint as true and construe the

20  pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City*

21  *of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007).  Legally conclusory statements, when

22  unsupported by actual factual allegations, need not be accepted. *Ashcroft*, 556 U.S. at 678-79.  A

23  court may consider, however, documents other than the complaint when they are judicially

24  noticeable under Federal Rule of Evidence 201 or where "no party questions their authenticity

25  and the complaint relies on those documents." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132

26  (9th Cir. 2012).

27  \\\

28  \\\

15

## VI.  ANALYSIS OF PLAINTIFF'S CLAIMS

### A.  Due Process (Claim IV)

As described above, Plaintiff alleges that Defendants violated his First Amendment rights by failing to provide him with notice and an opportunity to be heard regarding taking his dogs. Plaintiff's claim appears to be a procedural due process claim under the Fourteenth Amendment. Defendants argue that the 3AC fails to state a claim for due process violations because Plaintiff was afforded every opportunity of due process.

"To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.'" *Stamas v. Cnty. of Madera*, 795 F.Supp.2d 1047, 1077 (E.D. Cal. 2011) (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008)). "[P]rocedural due process claims do not 'deal with the substance of the challenged decisions, but with the process by which they were reached'." *Id.* (quoting *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994)). "The due process clause does not prohibit every deprivation by the state of an individual's property.  Only those deprivations carried out without due process are actionable under 42 U.S.C. § 1983." *Halverson*, 42 F.3d at 1260.

"Ordinarily, due process of law requires [notice and] an opportunity for some kind of hearing *prior* to the deprivation of a significant property interest." *Id.* However, a due process claim under § 1983 is not cognizable when the deprivation concerns property and the state provides adequate post-deprivation remedies to protect a plaintiff's procedural due process rights. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that deprivations of property do not violate the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available because "the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy").

Plaintiff's allegations as described in the amended complaint fail to state a claim for violation of due process under the relevant legal standards.  Plaintiff sufficiently alleges a constitutionally protected property right in his dogs. *See Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir.1994) ("A dog is an "effect" or "property" which can be seized.").   Plaintiff also sufficiently

16

alleges that he was deprived of his property by the euthanasia of his 33 dogs (although as noted above, he also at times requests return of his dogs in good health).

However, Plaintiff fails to set forth sufficient allegations that he did not receive all the process he was due especially given the post-deprivation state remedies. With respect to the first dog taking on April 27, 2013, Plaintiff alleges that Defendants seized eight of his dogs without first presenting a warrant. Defendants admit that they did not have a warrant to seize the dogs. Defendants assert, however, that Plaintiff fails to state a claim because animal control officers are authorized to conduct such seizures under the Tulare County Ordinance Code. Plaintiff acknowledges that the officers informed him that they were seizing the animals pursuant to the Tulare County Ordinance Code § 4-07-1215,[3] which allows animal control officers and peace officers to seize animals where there is evidence such animal has attacked another animal.

Plaintiff also acknowledges that he was notified of his right to challenge Defendants' decision to seize his animals. Plaintiff, however, did not avail himself of those post-deprivation state remedies. Plaintiff does not allege that Defendants refused to provide him with the available post-deprivation remedies. Rather, he is making a legal challenge that he should have received due process before seizure of the dogs. Because Plaintiff was not legally entitled to additional procedures before seizure of his dogs under these circumstances, Plaintiff has failed to plead a due process violation for the seizure of his eight dogs.

With respect to the second dog taking on October 22, 2013, Plaintiff's allegations establish that Defendants obtained a warrant before they seized twenty-five of Plaintiff's animals pursuant to the warrant. Plaintiff then participated in numerous administrative hearings and Tulare County Superior Court hearings regarding the seizure. Plaintiff ultimately obtained a favorable determination in his administrative hearing, leading to the indefinite postponement of his Superior Court case. Plaintiff acknowledges that he did not retrieve his animals because he did not believe he was required to comply and did not want to comply with the laws of Tulare

---

[3] Tulare County Ordinance Code § 4-07-1215 provides, in relevant part: "An Animal Control Officer, and any peace officer, shall have the power to summarily and immediately impound a dog or other animal where there is evidence it has attacked, bitten or injured any human being or other animal, pending any court proceeding or dog license or animal permit revocation proceeding arising from the attack, bite or injury . . . . An Animal Control Officer may enter and inspect private property to enforce the provisions of this section." (ECF No. 33-1 at 6-7.)

County.[4] Plaintiff's allegations fail to establish that he did not receive adequate due process for this second dog taking. Thus, Plaintiff has failed to plead a due process violation for the seizure of his twenty-five dogs.

Plaintiff also argues that Defendants fraudulently obtained the warrant by alleging that he was operating a commercial kennel. However, the warrant application, of which the Court took judicial notice,[5] is not based on the allegation that Plaintiff was operating a commercial kennel. (ECF No. 33-21). Instead, the application alleges that Plaintiff created an immediate threat to public health and safety by allowing vicious/dangerous dogs to run at large in violation of California Health & Safety Codes and Tulare County Ordinances, which Plaintiff does not dispute. In any event, Plaintiff previously presented this argument before an administrative judge, who upheld the validity of the warrant, (ECF No. 33-25), and Plaintiff cannot relitigate these issues before this Court. *See White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) ("In determining the preclusive effect of a state administrative decision or a state court judgment, we follow the state's rules of preclusion."); *Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 481, (2001) ("Issue preclusion is not limited to barring relitigation of court findings. It also "bars the relitigating of issues which were previously resolved in an administrative hearing by an agency acting in a judicial capacity.").

Accordingly, Defendants' motions to dismiss Plaintiff's due process claims should be granted.

\\\

---

[4] Plaintiff argued at hearing that his property is "federal patented land." Plaintiff did not make this argument in his Third Amended Complaint, and Plaintiff did not provide evidence to rebut the assertion that his property is within the unincorporated area of the County of Tulare. Thus, the Court will not endeavor to determine whether Plaintiff's predecessors-in-interest met the requirements of the Treaty of Guadalupe Hidalgo in 1848, 9 Stat. 922, which required persons claiming lands in California by virtue of any right or title derived from the Spanish or Mexican government to present their claims within two years or have their claims barred. *See Summa Corp. v. California ex rel. State Lands Comm'n*, 466 U.S. 198, 203 (1984).
[5] Defendants previously requested that the Court take judicial notice of several documents related to the underlying administrative and state court proceedings. (ECF No. 33.) Courts may take judicial notice of facts "not subject to reasonable dispute" when they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201. The Court granted the request for judicial notice to the extent the documents reflect the existence of a court's opinion, but not for the truth of the facts recited therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (citation omitted).

## B.  Unlawful Search and Seizure: Defective Warrant (Claims V, VII)

Defendants also argue that Plaintiff fails to state a claim for unlawful search and seizure concerning the second dog taking because the officers presented a valid warrant to seize the dogs and search the surrounding area.  Although this overlaps with the warrant issue described above, the Court analyses it as well under the Fourth Amendment.

"The Fourth Amendment states unambiguously that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) "[I]n the ordinary case, seizures of personal property are unreasonable within the meaning of the Fourth Amendment ... unless ... accomplished pursuant to a judicial warrant issued by a neutral and detached magistrate after finding probable cause[.]" *Menotti v. City of Seattle*, 409 F.3d 1113, 1154 (9th Cir. 2005) (quoting *Illinois v. McArthur*, 531 U.S. 326, 330-31, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (internal quotation marks omitted)).  "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh,* 540 U.S. at 557, 124 S. Ct. at 1289  (citing *Massachusetts v. Sheppard*, 468 U.S. 981, 988, n. 5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional"); *United States v. Stefonek*, 179 F.3d 1030, 1033 (7th Cir. 1999) ("The Fourth Amendment requires that the *warrant* particularly describe the things to be seized, not the papers presented to the judicial officer ... asked to issue the warrant") (emphasis in original).

Plaintiff acknowledges that he was presented with a warrant for the second dog taking. Plaintiff appears to allege that the warrant was false because it was not accompanied by a sworn affidavit. However, the officers were not required to present Plaintiff with a sworn affidavit or a competent eyewitness complaint.

Plaintiff also argues that the warrant did not allow for the search of his home. However, the warrant provided, "Such inspection shall include the observation of physical conditions of animal confinement and dangerous/vicious animals, the taking of photographs, the entry into outbuildings, if necessary, as well as the main structure." (ECF No. 33-21 at 24-26). Thus, Plaintiff fails to state a claim for unlawful search and seizure concerning the second dog taking.

Accordingly, Defendants' motions to dismiss the unlawful search and seizure claims should be granted.

### C. Unreasonable Force (Claim I, II)

Defendant argues that Plaintiff fails to state a cause of action for unreasonable force.

A claim of excessive force in the course of making an arrest is properly analyzed under the Fourth Amendment. *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Graham v. Connor*, 490 U.S. 386 (1989). "Under the Supreme Court's leading case, *Graham v. Connor*, determining whether the use of force to effect a seizure was unreasonable under the Fourth Amendment—and therefore unlawful—requires 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946–47 (9th Cir. 2017) (citing *Graham*, 490 U.S. at 397). In evaluating the governmental interest, the court considers factors including "(a) the severity of the suspect's alleged crime; (b) whether the suspect posed an immediate threat to the officers' safety; (c) whether the suspect was actively resisting arrest or attempting to escape." *Id.*

The Ninth Circuit has held that excessively tight handcuffing can constitute excessive force under the Fourth Amendment. *Wall v. Cty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004). Courts have found cognizable claims of excessive force where a plaintiff claims to have been demonstrably injured by tight handcuffing or where complaints about the tightness of the handcuffs were ignored. *Dell v. Espinoza*, No. 116CV1769DADMJSPC, 2018 WL 347787, at *6 (E.D. Cal. Jan. 10, 2018); *Compare Wall v. County of Orange*, 364 F.3d 1107, 1109–12 (9th Cir.2004) (arrestee suffered nerve damage as a result of continued restraint in tight handcuffs); *LaLonde v. County of Riverside*, 204 F.3d 947, 952, 960 (9th Cir.2000) (arrestee complained to officer who refused to loosen handcuffs); *Palmer v. Sanderson*, 9 F.3d 1433, 1434–36 (9th Cir.1993) (arrestee's wrists were discolored and officer ignored his complaint), *with Hupp v. City of Walnut Creek*, 389 F.Supp.2d 1229, 1233 (N.D.Cal.2005) (denying summary judgment in the absence of "evidence of a physical manifestation of injury or of a complaint about tight handcuffs that was ignored"); *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir.2002) (refusing to find a

constitutional violation where officers immediately acted after arrestee complained that handcuffs were too tight).

"Prolonged detention in a hot, unventilated police car may amount to a Fourth Amendment violation." *Dillman v. Tuolumne Cty.*, No. 1:13-CV-00404 LJO, 2013 WL 1907379, at *10 (E.D. Cal. May 7, 2013). Courts have recognized Fourth Amendment violations where a plaintiff was exposed to excessive heat for several hours and suffered resultant injuries. *Compare Kassab v. San Diego Police Dep't*, 453 Fed. Appx. 747, 748 (9th Cir. 2011) (finding triable issue of fact regarding Fourth Amendment violation because claimant held for four hours in vehicle with an interior temperature of 115 degrees, suffered from heat stroke, had difficulty breathing, and almost passed out several times); *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (finding that a post-arrest detention in a police vehicle "with the windows rolled up in ninety degree heat for three hours constituted excessive force" under the Fourth Amendment) *with Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (finding that a post-arrest detention for approximately one-half hour in an unventilated police vehicle in the sun was not in violation of the Fourth Amendment).

Plaintiff alleges that on April 27, 2013, he was arrested by Defendants McLean and Heiden. McLean allegedly twisted Plaintiff's right wrist to the middle of his back, causing him pain, and placed him in tight, restrictive, and painful handcuffs. McLean confined Plaintiff to the front of McLean's cruiser for over one hour in the hot sun, which exacerbated and contributed to Plaintiff's hypertension medical condition. Plaintiff complained to McLean that the handcuffs were too tight and restricted his blood flow. McLean declined to adjust the handcuffs. Plaintiff suffered a shoulder injury from the handcuffs, and developed bronchitis. Plaintiff notified Heiden of Plaintiff's medical condition. Heiden and McLean did not request medical treatment for Plaintiff. After one hour, Heiden loosened the handcuffs.

Plaintiff states a claim for excessive for in violation of the Fourth Amendment against Heiden and McLean. Plaintiff alleges that he suffered a shoulder injury due to tight handcuffing and the officers ignored his complaints about the tightness of the handcuffs. Plaintiff further

alleges that the officers detained in him the officers' cruiser for over one hour in the hot sun. The exposure exacerbated his hypertension and he developed bronchitis.

Accordingly, Defendants' motions to dismiss the unreasonable force claims against Defendants Heiden and McLean should be denied.

## VII.   PLAINTIFF'S REMAINING CLAIMS

The Court addressed above the issues raised at oral argument. As described above, Plaintiff's 3AC does not clearly state any other claims pursuant to Fed. R. Civ. P. 8 and they may be dismissed for that reason alone. Nevertheless, the Court addresses certain issues below that pertain to other allegations generally made in the 3AC, and raised by Defendants in their motion to dismiss.

### A.  The *Rooker-Feldman* Doctrine

Defendants maintain that the Court is precluded from exercising jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine. Defendants argue that, while the legal basis of his claims is unclear, Plaintiff is nonetheless seeking to litigate issues already raised and decided in state administrative and judicial proceedings.

The *Rooker–Feldman* doctrine bars a federal district court from exercising subject matter jurisdiction over a direct appeal from the final judgment of a state court as well as a '*de facto* equivalent' of such an appeal. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012); *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). The doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In analyzing whether a plaintiff is attempting to bring a "forbidden *de facto* appeal," the court determines whether a plaintiff "asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Noel*, 341 F.3d at 1164.  If that is the case, a plaintiff is also precluded from litigating any issues that are "inextricably intertwined" with the state court judicial decision from which the forbidden *de facto*

appeal is taken. *Id*. at 1165; *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) ("If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction.").

The Court previously analyzed Defendants' argument under the *Rooker-Feldman* doctrine in its December 1, 2016 Order dismissing Plaintiff's First Amended Complaint. The Court's decision and reasoning on the matter has not changed. It does not appear from the record before the Court that the *Rooker-Feldman* doctrine applies to Plaintiff's claims, at least as understood by the Court and discussed above. The record shows that Plaintiff filed a state court complaint on December 6, 2013, against County of Tulare and other defendants in Tulare County Superior Court regarding the seizure of his animals.  (ECF No. 33-23). It remains unclear whether the state court rendered any decision or whether it rendered a decision prior to the commencement of this action. The Court is thus unable to conclude that Plaintiff is a state-court loser complaining of injuries caused by a state-court judgment rendered before the district court proceedings commenced. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine should be denied at this time, based on the record before the Court.

## B.  Section 1983 Liability

Defendants argue that this action must be dismissed against several parties because Plaintiff has failed to allege any claims against them. Defendants also argue that Plaintiff has named several local government agencies, but does not allege that an official government policy or custom caused his injuries.

To set forth a section 1983 claim, a plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir.2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).  The plaintiff must present factual allegations against each individual defendant alleged to have violated his constitutional rights sufficient to

state a plausible claim for relief and place each individual defendant on notice of the claim against them. *Iqbal,* 556 U.S. at 678–79; *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal,* 556 U.S. at 678; *Moss,* 572 F.3d at 969.

Plaintiff has failed to present any factual allegations against Carothers, Lutz, Yandell, Young, Sergeant Wallace, Dr. Cheryl Duerksen, Kathleen Marie Bales-Lange, Esq., Deanne Hill Peterson, Esq., Mike Boudreaux, Mike Ennis, Pete Vander Poel, III, and Steve Worthley. Thus, these defendants should be dismissed from this action on that basis.

### C. Failure to Train

Similarly, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* "[T]he plaintiff must show that the alleged injury amounts to a constitutional deprivation, and that actions sanctioned by the municipality caused the constitutional violation." *Halverson*, 42 F.3d at 1260.

Accordingly, to set out a section 1983 failure to train claim against a local government, a plaintiff must either: (1) that it was the official policy of the local government not to train its employee or (2) that the local government's failure to train its employees amounted to deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. "The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is

the functional equivalent of a decision by the city itself to violate the Constitution." *Id.* (*citing Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)). A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. *Connick*, 563 U.S. at 62 (citing *Bryan Cty.*, 520 U.S. at 409).

Plaintiff fails to present any factual allegations of a policy or custom by Tulare County, Tulare County Animal Control, Tulare County Sheriff's Office, or Tulare County Board of Supervisors that caused the injuries alleged in his 3AC. Plaintiff has also failed to set forth any factual allegations that these defendants had actual or constructive notice that a particular omission in their training program on warrants, handling of drugged and tranquilized animals, and use of FDA controlled drugs would cause constitutional violations. Thus, these defendants should also be dismissed from this action.

### D. Unlawful Arrest

#### i. Warrantless Arrest (Claim I, II, III, VI)

Defendants argue that the 3AC fails to state a claim for unlawful arrest because they have no record of Plaintiff being placed under arrest during the dog takings. Plaintiff, however, asserts that he was arrested during both dog takings by Tulare County Sheriff officers on April 27, 2013, and October 22, 2013.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 918 (9th Cir. 2012) (quoting *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001)). "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *Id.* (quoting *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir.2004) (quoting *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001)) (internal quotation marks omitted). "There is probable cause for a warrantless arrest and a search incident to that arrest if, under the totality of the facts and circumstances known to the arresting officer, a prudent

person would have concluded that there was a fair probability that the suspect had committed a crime." *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010) (quoting *United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir. 1984)). "[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution." *Virginia v. Moore*, 553 U.S. 164, 176 (2008).

Plaintiff alleges that on April 27, 2013, McLean, Heiden, and Lewis arrested him pursuant to California Penal Code § 148(a) for resisting arrest and for not having identification without a warrant or probable cause. Plaintiff also alleges that on October 22, 2013, Popoola, Zendajas, and Torres arrested him without probable cause.

To the extent that he questions the officers' authority to effect an arrest pursuant to California Penal Code § 148(a) without a warrant, Plaintiff fails to state a claim. California Penal Code § 148(a) provides:

> a) (1) Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

The term "public officer" as used in section 148(a)(1) includes "public officials and employees who perform law enforcement-related duties in connection with their office or employment." *In re M.M.*, 54 Cal. 4th 530, 533 (2012). Therefore, the officers had authority to arrest Plaintiff for the crime of willfully resisting, delaying, or obstructing them in the discharge of their duties. Plaintiff does not allege that he was not willfully resisting, delaying, or obstructing the officers from impounding the animals. Thus, taking his allegations as true, Plaintiff fails to allege a claim for unlawful arrest.

### ii.  Failure to Give *Miranda* Warnings (Claim III)

Defendants also allege that the 3AC fails to provide the necessary showing to establish a violation of Plaintiff's *Miranda* rights.

Plaintiff alleges that McLean and Heiden arrested him, and failed to inform him of his Miranda rights on April 27, 2013. As the Court previously stated, the failure to recite the rights referred to as "Miranda" does not itself violate Plaintiff's constitutional rights. Rather (with certain exceptions), the government cannot use statements by a Plaintiff after an arrest against Plaintiff in a criminal proceeding unless *Miranda* warnings were given. *Miranda v. Arizona*, 384 U.S. 436 (1966). In other words, if police officers fail to advise a person of his or her Miranda rights, they do not automatically violate that person's constitutional rights. However, the government will be restricted from using statements from that person to convict that person of a crime.

Because *Miranda* is a procedural mechanism designed to protect a constitutional right, the failure to give *Miranda* warnings, in and of itself, does not necessarily violate an arrestee's Constitutional rights and cannot form the grounds for a § 1983 action. *See Chavez*, 538 U.S. at 772 (citing *Connecticut v. Barrett*, 479 U.S. 523, 528 (1987) (*Miranda* 's warning requirement is "not itself required by the Fifth Amendmen[t] ... but is instead justified only by reference to its prophylactic purpose"); *Tucker*, 417 U.S. at 444 (*Miranda's* safeguards "were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected").

Plaintiff again fails to set forth any factual allegations that any defendant used his statements made during his alleged arrest or seizure of his animals against him in a criminal case despite failing to provide a *Miranda* warning. Thus, Plaintiff fails to allege a violation of his *Miranda* rights. Accordingly, Defendants' motions to dismiss the unlawful arrest claims should be granted.

**E. Judicial Immunity from Liability (Claims IV, VIII, IX, X, XI, XII, XIII)**

Defendant also argues that Plaintiff improperly names judicial and nonjudicial officers who are immune from liability for the exercise of their judicial functions.

"Judges are absolutely immune from civil liability for damages for their judicial acts." *Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1es385, 1388 (9th Cir. 1987) (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872); *Pierson v. Ray*, 386 U.S.

547(1967) (applying judicial immunity to § 1983 action). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57(1978) (citing *Bradley*, 80 U.S. (13 Wall.) at 351, 20 L.Ed. 646)). "Absolute judicial immunity is not reserved solely for judges, but extends to nonjudicial officers for 'all claims relating to the exercise of judicial functions.'" *In re Castillo*, 297 F.3d at 947 (quoting *Burns v. Reed*, 500 U.S. 478, 499 (1991) (Scalia, J., concurring in part and dissenting in part)).

Plaintiff alleges claims against several judges and administrative hearing officers: Valeriano Saucedo, a former Judge of Tulare County Superior Court, Ralph Mario Agnello, Esq., an administrative hearing officer, and Thomas Elliott Hornburg, Esq., an administrative hearing officer. The allegations against these defendants stem from their exercise of judicial functions. Thus, these defendants are immune from civil liability for damages and should be dismissed from this action.

Plaintiff also appears to allege that Judge Hillman and Judge Papadakis of the Tulare County Superior Court, who are not named as defendants, failed to give Plaintiff official records of court proceedings, failed to give Plaintiff notice of a hearing by mail, and continued a hearing to give Taylor special rights in a proceeding. To the extent Plaintiff seeks to bring claims against these individuals, they are also immune from liability for their alleged conduct relating to the exercise of their judicial function.

Accordingly, Defendants' motions to dismiss the claims against the judicial and nonjudicial officers should be granted.

## VIII.   CONCLUSION AND RECOMMENDATION

For foregoing reasons, the Court finds that Defendants' motions to dismiss, (ECF Nos. 78, 88), should be granted as to all claims and defendants, except Tulare County Sheriff Officers Bradley McLean and Lance Heiden for unreasonable force in violation of the Fourth Amendment.

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.   All claims against Valeriano Saucedo, Thomas Elliott Hornburg, Ralph Mario
     Agnello, Cecile F. Shaffer, Kathleen Marie Bales-Lange, Lisa Marie Tennenbaum,
     and Zendajas, who have not been served in this action, should be dismissed with
     prejudice;[6] and

2.   Defendants' motions to dismiss, (ECF Nos. 78, 88), should be granted as to all
     remaining claims and defendants, except Tulare County Sheriff Officers Bradley
     McLean and Lance Heiden for unreasonable force in violation of the Fourth
     Amendment.

This Findings and Recommendation is submitted to the assigned United States District
Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) of the Local Rules of
Practice for the United States District Court, Eastern District of California. Within **twenty-one
(21) days** after being served with a copy, either party may file written objections with the Court
and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate
Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's
ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections
within the specified time may waive the right to appeal the District Court's order. *Martinez v.
Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **March 15, 2018**                    /s/ Erica P. Grosjean
                                               UNITED STATES MAGISTRATE JUDGE

---

[6] To the extent the Court recommends dismissal of any party that has not appeared, the dismissal is pursuant to the
Court's authority under 28 U.S.C. § 1915(e)(2), which provides that the Court may dismiss a complaint filed *in
forma pauperis* at any time if the court determines that it fails to "state a claim on which relief may be granted," is
"frivolous or malicious," or "seek[s] monetary relief against a defendant who is immune from such relief."